STATE v. JACKSON.*

(In Banc.   Oct. 11, 1926.)

[109 So. 724.   No. 25459.]

1. PARDON. *Statute denouncing wife desertion or nonsupport and providing for suspension of sentence held unconstitutional as invading pardoning power of governor (Laws 1924, chapter 155; Constitution 1890, section 124).*

    Chapter 155, Laws of 1924, is unconstitutional and void because it invades the pardoning power vested in the governor by section 124 of the Constitution of 1890.

2. STATUTES. *Section of statute creating offense of abandonment of wife or nonsupport held inseparable from invalid provision for suspension of sentence (Laws 1924, chapter 155, sections 1, 3-5; Constitution 1890, section 124).*

    Chapter 155 is a unified act, and the provisions thereof cannot be separated so that offense denounced in section 1 can be saved and the other provisions eliminated as unconstitutional. All the sections are necessary to carry out the legislative intention in enacting such act.

    SMITH, C. J., and COOK, and HOLDEN, JJ., dissenting.

*Corpus Juris-Cyc References:   Constitutional Law, 12CJ, p. 838, n. 58, 59; p. 839, n. 60, 70; Criminal Law, 17CJ, p. 203, n. 90 New; Pardons, 29Cyc, p. 1563, n. 17, 18, 19, 20, 21; Statutes, 36Cyc, p. 977, n. 28; p. 978, n. 31; p. 984, n. 67; Effect of statute giving immunity to witness, see 28 R. C. L. 440; 5 R. C. L. Supp. 1538.

APPEAL from circuit court of Jones county.
HON. R. S. HALL, Judge.

A. L. Jackson was·indicted for deserting or willfully refusing to support his wife, and from a judgment sustaining a demurrer to the indictment the state appeals. Affirmed.

*J. A. Lauderdale,* Assistant Attorney-General, for the state.

A. L. Jackson, appellee, was indicted charged with wife desertion as defined by section 1, chapter 155, Laws of 1924. Counsel for Jackson filed a demurrer to the indictment, which demurrer was by the court sustained. The state has appealed from the judgment of the court sustaining the demurrer, thus raising the constitutionality *vel non* of this statute.

I. "Acts of the legislature are to be upheld by the courts unless it is plainly apparent that they conflict with the organic law after solving all doubts in favor of the validity of the law." *U. of Miss.* v. *Waugh,* 105 Miss. 627; *Johnson* v. *Reeves,* 112 Miss. 227; 6 R. C. L., pp. 89-90.

At common law the husband's neglect to support his wife, coupled with his abandonment or desertion of her, was not a criminal offense. Section 1, chapter 155, Laws of 1924, makes such neglect a crime, defines the constituent parts of the crime and fixes the punishment therefor. It must be conceded by all that this section taken alone is constitutional.

Section 2 of this act provides how prosecution under section 1 may be begun. This section merely restates what was and is the law with reference to felonies. It does not alter or change the common law or our statutes on this subject with reference to the prosecution of persons charged with the commission of a felony. It merely reaffirms the law as it was written before this section was enacted and in order to make it comply with the decisions of this court in *State* v. *Šansome,* 97 So. 753.

Section 3 provides that in the event a person is indicted for a violation of section 1 thereof and pleads guilty thereto or is convicted on said indictment, that the court may suspend the fine or imprisonment imposed, or any part thereof, provided the defendant enters into a bond conditioned that he shall provide for and support his wife for a period of two years. I think this section is constitutional and it will be argued more fully in this brief. However, even though it may be conceded that this section is unconstitutional, the appellee has no right to raise this question. It is optional with him whether or not the trial court suspends his sentence. This cannot be done without his express consent and agreement. He cannot even tacitly consent but he must do a positive and unequivocal act before he can receive the benefits provided for in this section. He must execute and file a good and solvent bond before the court is authorized to suspend his sentence. This provision is for the benefit of appellee and is not adverse to his rights and interests.

Even though this section is unconstitutional, it cannot operate to deprive appellee of his rights and cannot become effective as to him without his consent and agreement, and under the rule laid down in the case of *M. & C. Ry. Co.* v. *State,* 110 Miss. 304, he cannot complain.

Section 4 provides that in the event the defendant violates the conditions of his bond, his suspension of sentence may, in the discretion of the judge, be revoked. If a defendant obtains a suspended sentence, as provided for in section 3, then he cannot complain that his suspension is revoked because he violates the conditions of his agreement.

Section 124 of the state Constitution provides that the governor shall have power to grant reprieves and pardons, to remit fines, etc. The third ground for demurrer alleges that chapter 155, Laws of 1924, is in violation of this section. This contention is so far fetched that it needs no refutation. The right of the legislature to au-

thorize and empower a trial court in its discretion to suspend a sentence imposed upon a defendant when he is adjudged guilty is universally recognized; and the principle is well settled in this state. This statute does not change the general law on the subject. It in no way abridges the right and power of the governor.

*Shipman & Taylor,* for appellee.

One ground for demurrer is that the said act is void, because it is an attempt to infringe upon the pardoning power of the governor, in whom is vested all power to grant pardons and reprieves in criminal cases, except as specifically mentioned.

This act in its provision for suspending sentence on conditions set forth therein was not seeking to grant the court the power which is said to be inherent in all courts of general jurisdiction in criminal cases to suspend sentences, but it makes it the duty of the court in cases arising under the act, upon compliance with the other provisions relative to making bond by the defendant, to suspend the sentence; and, further, provides that, in case of breach of the terms of the bond, the judge or the court shall order the defendant rearrested and required to perform the sentence imposed and suspended. This, we submit, is not authority to the court to exercise the discretion vested in every such court, but is a special law in furtherance of the scheme of the act, suspending the operation of the general law, and making what has always been heretofore the exercise of a sound discretion on the part of the court a requirement, should the defendant desire to avail himself of the right to make the bond; therefore, it is an infringement on the pardoning power as the same is vested solely in the governor of the state. Chapter 109, Laws of 1908, was declared void on this account.

The sole power to pardon is confided by the Constitution to the governor and cannot be delegated elsewhere

by the legislature.  By the same token the "sole power to grant reprieves" is vested by the same section of the Constitution and confided to the governor, and cannot be delegated elsewhere by the legislature. *State* v. *Kirby*, 96 Miss. 629, 51 So. 811.  See, also, *Ex parte McInnis*, 54 So. 260.

ETHRIDGE, J., delivered the opinion of the court.

The appellee, Jackson, was indicted in the First district of Jones county, Miss., on a charge of violating chapter 155 of the Laws of 1924.  The material part of the indictment reads as follows:

".  .  .  Upon their oaths present that A. L. Jackson on the 1st day of September, 1924, in the county and district aforesaid did unlawfully, willfully, and feloniously, without just cause, desert or willfully neglect or refuse to provide for the support or maintenance of Mrs. A. L. Jackson, his wife, leaving her in destitute or necessitous circumstances, against the peace and dignity of the state of Mississippi."

The defendant demurred to the indictment on several grounds:

"That said chapter 155 of the Laws of 1924 is unconstitutional in this:

"(1)  The said act is in contravention of section 159 of the said Constitution, in that it is an attempt to, and if carried into effect will, usurp the jurisdiction vested solely in the chancery courts of the said state by the said Constitution.

"(2)  The said act is violative of section 87 of the said Constitution in that it attempts to suspend, by authority of the legislature, the provisions of a general law for the benefit of private individuals.

"(3)  The said act is void because it is an attempt to, and if carried into effect will, infringe upon the pardoning power, vested in the governor of the state.

"And, finally, the said act is void for that the offense sought to be charged therein and thereby is indefinite, and does not specifically provide and define with reasonable certainty what does constitute 'without reasonable cause,' or what is not a just cause."

Section 1 of chapter 155 reads as follows:

"*Be it enacted by the legislature of the state of Mississippi*—That any husband who shall without just cause, desert or willfully neglect or refuse to provide for the support or maintenance of his wife, leaving her in destitute or necessitous circumstances; or any parent who shall desert or willfully neglect or refuse to provide for the support and maintenance of his or her child or children under the age of sixteen years, leaving such child or children in destitute or necessitous circumstances, shall be guilty of a felony and on conviction thereof, shall be punished by a fine of not less than twenty-five dollars nor more than five hundred dollars, or by imprisonment in the penitentiary not exceeding two years or both, in the discretion of the court."

Section 3 of chapter 155 reads as follows:

"In case of an indictment, and at the trial on the entry of a plea of guilty or after conviction the court may in imposing the fine or imprisonment as provided for in section 1 of this act, suspend the same or any part thereof, upon the defendant entering into and executing a good and solvent bond to be approved by the circuit clerk conditioned that such defendant will provide for the support and maintenance of his wife or child or children as the case may be for a period of two years."

Section 4 of chapter 155 reads as follows:

"If the court be satisfied by information and due proof under oath that at any time during said period of two years the defendant has violated the condition and terms of such bond it may forthwith proceed to enforce the suspended sentence and penalty aforesaid."

Section 5 provides that:

"No other or greater evidence shall be required to prove the marriage of such husband and wife, or that the defendant is the father or mother of such child or children than is or shall be required to prove such facts in civil actions."

It further provides that:

"In no prosecution under this act shall any existing statute or rule of law prohibiting the disclosure of confidential communications between husband and wife apply, and both husband and wife shall be competent witnesses to testify against each other to any and all relevant matters, including the fact of such marriage and the parentage of such child or children; provided that neither shall be compelled to give evidence incriminating himself or herself."

It further provides that:

"Proof of the desertion of such wife, child or children in destitute or necessitous circumstances or neglect or refusal to provide for the support and maintenance of such wife, child or children shall be *prima-facie* evidence that such desertion, neglect or refusal is willful."

All of the grounds of attack upon the statute are interesting, but we will consider only the argument that the statute is unconstitutional because it invades the pardoning power vested in the governor by section 124 of the state Consitution, as a decision of that question will dispose of the appeal.

It will be noted from a reading of the statute above set out, that, in case of an indictment and at the trial on the entry of a plea of guilty or after conviction, the court may in imposing the fine or imprisonment, as provided for in section 1 above set out, suspend same or any part thereof, upon the defendant entering into and executing a good and solvent bond to be approved by the circuit clerk, conditioned that such defendant will provide for the support and maintenance of his wife or child or children, as the case may be, for a period of two years.

It is provided in section 4, above set out, that, if the court be satisfied by information and due proof under oath that at any time during said period of two years the defendant has violated the condition and terms of such bond, it may forthwith proceed to enforce the suspended sentence and penalty aforesaid.

Taking the statute as a whole, it clearly appears that it is contemplated that the court may suspend the sentence upon defendant giving a bond for support, according to the ideas of the circuit judge; and, if the bond is given and lived up to for a period of two years, the judgment is not to be further enforced.

The scheme of the legislature clearly was to hold the conviction and sentence over the defendant for the purpose of enforcing the discharge of his civil duties to his wife or child, or both. If the defendant gives a bond and keeps faith for a period of two years, then no provision is made for the infliction of punishment for violation of section 1, and none is contemplated in such case. In other words, at the end of two years, where a bond is given and lived up to, the offense is completely wiped out and satisfied. It is too manifest for doubt that the legislature would not have enacted the first section except for the provisions in sections 3, 4, and 5.

Section 124 of the Constitution of 1890 reads as follows:

"In all criminal and penal cases, excepting those of treason and impeachment, the governor shall have power to grant reprieves and pardons, to remit fines, and in cases of forfeiture, to stay the collection until the end of the next session of the legislature, and by and with the consent of the Senate to remit forfeitures. In cases of treason he shall have power to grant reprieves, and by and with the consent of the Senate, but may respite the sentence until the end of the next session of the legislaure; but no pardon shall be granted before conviction; and in cases of felony, after conviction no pardon shall be granted until the applicant therefor shall have published for thirty days, in some newspaper in the

county where the crime was committed, and in case there be no newspaper published in said county, then in an adjoining county, his petition for pardon, setting forth therein the reasons why such pardon should be granted.''

This section was construed in *State* v. *Kirby,* 96 Miss. 629, 51 So. 811. It was there held that the power to pardon is vested solely and exclusively in the governor of the state, and that the act of the legislature, section 3 of chapter 109 of the Laws of 1908, providing,

''If any convict, when he otherwise ought to be put to work, should be unable to labor from bodily infirmity apparently permanent, the board of supervisors may discharge him from the jail after the expiration of thirty days from the date of sentence. But in no case shall a convict be discharged, unless there be produced to the board a certificate of the sheriff, a physician and another reputable person as to such infirmity, and the sheriff shall make the fine, costs and jail fees out of the property and effects of the convict, if he have any,''—was unconstitutional. The court said in its opinion:

''It is claimed on the part of the state that the above section of the act violates section 124 of the Constitution of the state in that it constitutes a pardon by the board of supervisors, a power which is exclusively delegated to the governor. We do not deem it necessary to set out here the section of the Constitution above referred to, further than to say that it is provided therein that in all criminal and penal cases, except treason and impeachment, the governor shall have the power to grant reprieves and pardons, to remit fines, etc. An examination of this section of the Constitution convinces us that section 3, page 105, of the Acts of 1908, is an invasion of the power of the governor, and the section in question is unconstitutional. The sole power to pardon is confided by the Constitution to the governor, and cannot be delegated elsewhere by the legislature. 8 Cyc. 829. The provisions of the act are humane and praiseworthy, but with this we·

143 Miss.—48.

have no concern, when engaged in determining its validity.''

In 29 Cyc. at page 1563, it is said:

''The Constitution of the United States gives to the President the 'power to grant reprieves and pardons for offences against the United States, except in cases of impeachment.' By the Constitutions of some of the states, the power of pardoning is vested in the governor alone; in others, the consent of the legislature is required; and not infrequently the power of pardon is delegated to a board. The pardoning power, whether exercised under the federal or state Constitution, is the same, in its nature and effect, as that exercised by the representatives of the English crown in this country in colonial times.

''The pardoning power is not naturally nor necessarily an executive function; and, where the Constitution is silent, vests no more in one branch of the government than in the other.''

It will be seen from this text that the pardoning power in the different states is differently vested; that is, in some states the pardon board exercises the function, and in others the consent of the legislature is necessary, while in others it is vested in the governor alone. The case above cited shows that in our state it is vested alone in the governor. The legislature is powerless to limit, restrict, or withdraw the power from the governor, and is powerless to exercise the power itself or to confer on any other agency than the governor the power to pardon.

An interesting case upon the pardoning power is *Ex parte Garland,* 4 Wall. 333, 18 L. Ed., 366. In that case the Congress of the United States undertook to provide that no person who had engaged in the rebellion should practice law in the United States courts, and provided that all applicants practicing in such court must take affidavit to the effect that he had not so participated. The President had granted a pardon to Garland, who presented his pardon with his application to be permitted

to resume his practice in the United States supreme court, he having been admitted to practice therein before the war, and having held office under the Confederate government. The court held that the effect of the pardon by the President was a complete remission of all the penalties for engaging in the Civil War and the Confederate service, and that Congress could not restrict the effect of the pardon by the statute involved; that the power of pardon in the President was complete and unrestricted, and that Congress could not validly legislate with reference thereto, so as to deprive the President of any part of the power. See *State* v. *Sloss,* 25 Mo. 291, 69 Am. Dec. 467, and authorities under case note appended to Am. Dec. in this case.

It is not necessary in this case to decide the other questions presented, and this decision does not deal with them. Those questions are reserved for future consideration, should a case hereafter arise.

The judgment of the court is therefore affirmed.

*Affirmed.*

SMITH, C. J. (dissenting).

Judge COOK, Judge HOLDEN, and I are of the opinion that the right conferred by the third section of this statute, on a person convicted thereunder, of electing whether he will execute a bond to support his wife and children, or pay a fine, or suffer imprisonment, as the one or the other may be imposed, is not a pardon within the meaning of that term as used in the Constitution.

"The doctrine of the authorities is, that 'a pardon reaches both the punishment prescribed for the offence, and the guilt of the offender,' and that 'it releases the punishment and blots out of existence the guilt, so that, in the eye of the law, the offender is as innocent as if he had never committed the offence.' 'If granted after conviction, it removes the penalties and disabilities, and restores him (the convict) to all his civil rights. It makes him, as it were, a new man, and gives him a new credit and capacity.' . . . A pardon by the governor is an

act of sovereign grace, . . . rehabilitates a person in all his rights as a citizen, . . . obliterates the fact of conviction, and makes it as if it never was.'' *Jones* v. *Board of Registrars,* 56 Miss. 766, 31 Am. Rep. 385.

The exemption from fine or imprisonment conferred by the third section of this statute is not of grace nor at the discretion of the court, but is a right to which a person convicted of violating the statute is absolutely entitled on compliance by him with the conditions imposed therefor by the statute. Moreover, the guilt and the conviction of the convict remain in effect with all of the consequences that flow therefrom, except liability to fine or imprisonment thereunder; and, where such is the effect of a statute, the courts generally hold that it does not encroach on the pardoning power. *State* v. *Page,* 60 Kan. 665, 57 P. 514, 20 R. C. L. 557, and authorities there cited. The statute simply provides alternative punishment—imprisonment, the giving by the convict of a bond to support his wife and children, and the compliance by him with the obligations of that bond; and—''whether punishment may be imposed at all, and, if so, its character and extent, is a matter of statute alone; and, if the legislature in its wisdom concludes it to be sound policy to offer a premium to good conduct and reform in a prisoner by tendering him an amelioration of the rigor of his punishment, we are unable to see in what manner this constitutes the slightest interference with the exercise of executive clemency.'' *Ware* v. *Sanders,* 146 Iowa, 233, 124 N. W. 1081.

The statute does not attempt to and could not take away from the governor his power to pardon for convictions under it, and such power, of course, remains in full force and effect.

Section 26 of the Constitution provides that a person shall not be compelled to give incriminating evidence against himself; but we have several statutes compelling a person to give incriminating evidence against himself and providing that, when he does give such evidence:

"He shall not be prosecuted or subject to any penalty or forfeiture for or on account of any transaction, matter or thing concerning which he may testify."

The exemption from punishment conferred by these statutes is valid (*State* v. *Bramlett* (Miss.), 47 So. 433; *Husbands* v. *State,* 105 Miss. 548, 62 So. 418; *Lucas* v. *State,* 130 Miss. 8, 93 So. 437; *Hosey* v. *State,* 136 Miss. 75, 100 So. 577; *Ryan* v. *State,* 136 Miss. 587, 101 So. 381; *Triplett* v. *State,* 136 Miss. 320, 101 So. 501; *Sudduth* v. *State,* 136 Miss. 742, 101 So. 711); and the courts generally hold that without it such statutes would violate the constitutional right of a person to refuse to testify to anything that would tend to incriminate him. This was expressly held by the supreme court of the United States in *Counselman* v. *Hitchcock,* 142 U. S. 547, 12 S. Ct. 195, 35 L. Ed. 1110; 28 R. C. L. 441. The immunity from punishment conferred by these statutes is not of grace, but is earned by the witness and becomes a matter of right; consequently, it is not a pardon within the meaning of that term as used in the Constitution.

Our Vagrancy Statute, section 5055, Code of 1906, Hemingway's Code, section 3332, has been enforced by this court "full many a time and oft," and it contains a provision similar in principle to that of section 3 of the statute here under consideration. Section 5058, Code of 1906, Hemingway's Code, section 3335.